IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| IRVING ANTHONY FOLSTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 117-092 |
| | ) | |
| JAMES DEAL, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at Ware State Prison in Waycross, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254.  Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

This case challenges the validity of Petitioner's conviction for malice murder, felony murder, criminal damage to property, and aggravated assault, as determined by a jury in Richmond County, Georgia, after a trial conducted from February 28 through March 2, 2011. Folston v. State, 755 S.E.2d 803, 804 & n.1 (Ga. 2014).  The indictment, filed on February 24, 2009, charged Petitioner with malice murder, felony murder, criminal damage to property in the first degree, aggravated assault, and three counts of possession of a firearm during the commission of a crime.  (Doc. no. 9-10, pp. 2-6.)  The jury convicted Petitioner on all

charges but the three counts of possession of a firearm, and on March 3, 2011, the trial court sentenced Petitioner to life imprisonment for malice murder, ten consecutive years for criminal damage to property, and twenty consecutive years for aggravated assault.[1]  Folston, 755 S.E.2d at 804 & n.1.  Attorney Jean Colohan represented Petitioner at trial.  (Doc. no. 9-10, p. 10; doc. no. 9-21, p. 3.)

Attorney James S.V. Weston represented Petitioner post-conviction.  After a holding a hearing on the motion for new trial, (doc. no. 9-23, pp. 145-71), the trial court denied the motion for new trial and directed the Assistant District Attorney (ADA) to prepare an appropriate order for his signature.  (Doc. no. 9-19, pp. 9-15.)  Mr. Weston filed a direct appeal and raised three enumerations of error:  (1) insufficiency of the evidence to support the verdict; (2) alleged statements from Petitioner's co-defendant to another individual should have been excluded as inadmissible hearsay; and (3) ineffective assistance of trial counsel in failing to object to the allegedly inadmissible hearsay.  Folston, 755 S.E.2d at 804; (doc. no. 9-23, pp. 172-77; doc. no. 9-24, pp. 1-5.)  The Georgia Supreme Court found no merit to the alleged errors and affirmed the judgment on March 10, 2014.  Folston, 755 S.E. 2d at 805.

In its opinion, the Georgia Supreme Court provided the following description of facts about the murder based on the evidence offered against Petitioner at trial:

> [O]n May 1, 2008, Folston met with his drug selling partner, Levaughn Marcel Sloans, gave Sloans a silver revolver, and told Sloans that they needed to "handle" a situation.  Stephen Smith, who was with Sloans at the time in order to purchase drugs from him, overheard the conversation between Folston and Sloans.  Sloans turned to Smith and said "I got something I got to go do; I

---

[1]The felony murder merged into malice murder.  (Doc. no. 9-15, p. 1.)

have to take care of something."  Folston then went with Sloans to look for President, a man who had allegedly stolen drugs and money from Folston in the past.  Folston and Sloans drove to a nearby store, where they found President, and Sloans fired at President several times, hitting him in the right side.  The bullet traveled through President's heart, killing him.  Another bullet fired from the gun hit the tire of a nearby car in which Taisha Wesley was driving with her three sons.  Later that evening, Folston approached Smith and told him "I don't want you going around talking about what happened earlier today."

Id. at 804.

Petitioner filed a state habeas corpus petition *pro se* on January 2, 2015, in Calhoun

County, and subsequently amended that state petition on April 30, 2015. (Doc. nos. 9-1, 9-2.)

Petitioner raised the following claims in his state habeas petition:

(1)  The trial court violated Petitioner's right to a fair trial and due process rights when it gave conflicting instructions on the effect of impeachment of a witness and credibility of witnesses, in that the jury was instructed impeachment proves that a witness is unworthy of belief, but the jury was to decide credibility.

(2)  The trial court denied Petitioner a fair trial when it gave a defective jury instruction on evidence which addressed the effect of substantive evidence but did not explain what substantive evidence is.

(3)  Trial counsel provided ineffective assistance by:

(a)  failing to timely object to the improper jury instructions described in grounds one and two above;

(b)  operating under a known conflict of interest by representing Petitioner and, in separate cases, previously representing critical State's witnesses regarding their plea deals in exchange for testimony against Petitioner;

(c)  failing to thoroughly cross-examine State's witnesses about their plea deals in exchange for testimony against Petitioner;

(d)  failing to object to lineup identification testimony by State's witness Steve Smith without any basis being established for that lineup; and

(e)  failing to file a motion to reveal the deal between the State and witnesses Bruce Benziger and Steve Smith in exchange for their testimony against Petitioner.

3

(4)   Appellate counsel provided ineffective assistance by failing to raise the above three claims on appeal.

(Doc. nos. 9-1, 9-2, 9-3.)  The state habeas court conducted an evidentiary hearing on May 18, 2015, and Mr. Weston testified at the hearing.  (Doc. no. 9-7, pp. 13-18; doc. no. 9-8, pp. 1-16.)  The state habeas court denied relief in a final order dated January 15, 2016, and filed January 16, 2016.  (Doc. no. 9-3.)  The Georgia Supreme Court denied Petitioner's request for a certificate of probable cause to appeal (CPC) on February 27, 2017.  (Doc. no. 9-5.)

Petitioner then timely filed the above-captioned § 2254 petition *pro se*.  (Doc. no. 1.) Petitioner raises the following grounds for relief:[2]

(1)   The trial court violated Petitioner's right to a fair trial and due process rights when it gave conflicting instructions on the effect of impeachment of a witness and credibility of witnesses, in that the jury was instructed impeachment proves that a witness is unworthy of belief, but the jury was to decide credibility.

(2)   The trial court denied Petitioner a fair trial when it gave a defective jury instruction on evidence which addressed the effect of substantive evidence but did not explain what substantive evidence is.

(3)   Trial counsel provided ineffective assistance by:

(a) failing to timely object to the improper jury instructions described in grounds one and two above;
(b) operating under a known conflict of interest by representing Petitioner and, in separate cases, previously representing critical State's witnesses regarding their plea deals in exchange for testimony against Petitioner;

---

[2]Petitioner did not list his claims in the § 2254 petition form, instead referring to his brief in support.  (See doc. no. 1, pp. 1-16.)  Upon review of the brief in support, the Court concludes Petitioner is raising the same claims in the same form he raised them on direct appeal and in his state habeas petition.  (Id. at 23-24, 36-37 (contesting rulings on state habeas and direct appeal claims).)  For ease of reference, the Court will refer to the claims by the numbers it has assigned in identifying Petitioner's federal claims.

> (c) failing to thoroughly cross-examine State's witnesses about their plea deals in exchange for testimony against Petitioner;
> (d) failing to object to lineup identification testimony by State's witness Steve Smith without any basis being established for that lineup; and
> (e) failing to file a motion to reveal the deal between the State and witnesses Bruce Benziger and Steve Smith in exchange for their testimony against Petitioner.

> (4)  Appellate counsel provided ineffective assistance by failing to raise the above three claims on appeal.

> (5)  The evidence was insufficient to support his convictions.

(See generally id. at 20-44.)

## II.   STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential

standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011) (citations omitted).

In <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

<u>Id.</u> (internal citations omitted).  Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." <u>White v. Woodall</u>, 572 U.S. 415, 134 S. Ct. 1697, 1702 (2014).  Rather, the habeas petition must show the state court decision was "objectively unreasonable." <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-21 (2003); <u>see also</u> <u>Woods v. Donald</u>, 575 U.S.-, 135 S. Ct. 1372, 1376 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").   A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. <u>Reed v. Sec'y, Fla. Dep't of Corr.</u>, 767 F.3d 1252, 1260-61 (11th Cir. 2014); <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1325 (11th Cir. 2013).  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence."  Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review.").  "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . .  Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III.   DISCUSSION

### A.   This Court Defers to the Decision of the Georgia Supreme Court that the Evidence Adduced at Trial Was Sufficient to Authorize a Rational Trier of Fact to Find Petitioner Guilty of the Crimes for Which He Was Convicted Beyond a Reasonable Doubt.

In Ground Five of the federal petition, Petitioner argues the evidence at trial was insufficient to support his convictions and did not establish beyond a reasonable doubt he

committed the crimes for which he was convicted.  (Doc. no. 1, pp. 37-39.)  When Petitioner raised this sufficiency of the evidence argument on direct appeal, the Georgia Supreme Court summarized the evidence – as set forth in detail in Part I, *infra* – and found the evidence sufficient to authorize a rational trier of fact to find Petitioner guilty beyond a reasonable doubt under <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  <u>See</u> <u>Folston</u>, 755 S.E.2d at 804.  The Georgia Supreme Court also cited the Georgia statute providing "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."  <u>Id.</u> (citing O.C.G.A. § 16-2-20).

In <u>Jackson</u>, the Supreme Court held that the Fourteenth Amendment Due Process Clause mandates no person shall be convicted unless the evidence is sufficient to convince the trier of fact beyond a reasonable doubt of the existence of every element of the offense. 443 U.S. at 316.  Thus, the relevant question on review of a sufficiency of the evidence claim is whether "viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319.  The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." <u>Tharpe</u>, 834 F.3d at 1336.

Petitioner fails to show the state court's conclusion was an unreasonable application of <u>Jackson</u>.  On direct appeal, the appellate court has a duty to view the evidence in the light

most favorable to the verdict.  Jackson, 443 U.S. at 319; Barela v. State, 517 S.E.2d 321, 323 (Ga. 1999) ("[T]he [appellate] Court does not weigh or evaluate the evidence for itself, nor does it resolve conflicts concerning the evidence.  Rather it examines the evidence in its entirety in a light most favorable to the verdict to determine whether any rational trier of fact could have found the accused guilty beyond a reasonable doubt.")  Moreover, as explained above, in these federal proceedings, factual determinations made by the state court are presumptively correct and must be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Without citation to any portion of the record, Petitioner states in conclusory fashion, "No states' witness ever put Petitioner on the scene, and theres no evidence saying that Folston and Sloans went together to do anything."  (Doc. no. 1, p. 38.)

However, the record before the Court provides ample support for the jury's verdict and for the state court's determination that the evidence was sufficient for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt.  At trial, the State produced evidence that Petitioner and co-defendant Sloans sold drugs to Steve Smith.[3]  (Doc. no. 9-21, p. 261 (Tr. Trs. 252).)  Mr. Smith testified at trial he heard Petitioner tell co-defendant Sloans he had "found him" and Sloans needed to "handle it."  (Id. at 288-89 (Tr. Trs. 279-80).)  Mr. Smith also testified Sloans told him he had to leave because he had "something I got to do; I

---

[3]At trial, co-defendant Sloans, the actual shooter of the murder victim convicted at a separate trial, (doc. no. 9-11, p. 1), was identified as "Black," and Petitioner was identified as "G."  (Doc. no. 9-21, pp. 200, 258 (Tr. Trs. 191, 249).)

have to take care of something." (Id. at 290 (Tr. Trs. 281).)  The jury also heard testimony Sloans was the person who shot the victim using a silver handgun.  (Id. at 178-80, 264 (Tr. Trs. 169-71, 255).)  The evidence at trial showed Petitioner gave a silver handgun to Sloans on the day of the murder and told Sloans to go "handle it" after telling Sloans he had found the person who previously robbed him and Sloans.  (Id. at 288-89, 297 (Tr. Trs. 279-80, 288).)

Petitioner also testified at trial.  The jury heard from Petitioner that he sold drugs with Mr. Sloans in the neighborhood where the shooting took place, knew the victim, and had been robbed by the victim approximately six months prior to the murder.  (Id. at 55-64 (Tr. Trs. 357-66).)  At bottom, Petitioner complains the jury incorrectly evaluated the evidence. However, it was the province of the jury to weigh the evidence, and there is nothing to suggest no rational trier of fact could have found Petitioner guilty beyond a reasonable doubt.

The Georgia Supreme Court did not unreasonably apply Jackson.  Petitioner's conclusory statement about his interpretation of the evidence is woefully inadequate to establish that the state court unreasonably applied Jackson or that the court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Indeed, Petitioner has not presented any evidence—much less clear and convincing evidence—to rebut the presumptive correctness of the Georgia Supreme Court's factual determinations.  The evidence at trial was sufficient for a jury to find guilt beyond a reasonable doubt.  Accordingly, Petitioner is not entitled to federal habeas relief in connection with his claim in Ground Five.

B.      **Petitioner's Procedural Default**

1.      **A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies.**

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims the petitioner did not raise in state court, but could have raised by any available procedure.  28 U.S.C. § 2254(b)(1)(A) & (c).  A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the federal claims.  Castille v. Peoples, 489 U.S. 346, 351 (1989).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts."  Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)).   The exhaustion requirement applies with equal force to all constitutional claims.  See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-54 (11th Cir. 2012); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992).  "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'"  Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (citation omitted).   Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available.  McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005).

11

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court. First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on independent and adequate procedural grounds. "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment." Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1335 (11th Cir. 2012).

A state court decision rests on "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim. Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law. Finally, the state procedural rule must be adequate; *i.e.,* it may not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine. In other words, a state procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established and regularly followed."

Id. at 1336 (internal quotations and citations omitted). Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." Walker v. Martin, 562 U.S. 307, 311 (2011).

12

Second, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court.  In such instances, unless the petitioner either establishes the cause and prejudice or the fundamental miscarriage of justice exception, the failure to bring the claim properly in state court has "matured into a procedural default."  Smith v. Jones, 256 F.3d 1135, 1138-39 (11th Cir. 2001).  Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."  Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1342 (11th Cir. 2009) (citing Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998)); Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999).  To determine whether a claim is procedurally barred in this way, the federal court must ask whether "it is clear from state law that any future attempts at exhaustion would be futile."  See Bailey, 172 F.3d at 1305.

Simply put, if a claim has not been "fairly presented to the state courts, it is procedurally defaulted."  Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006).  To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) precludes state habeas review of any issue not preserved for collateral attack in a state court by timely objecting and raising the issue on appeal.  See Devier v. Zant, 3 F.3d 1445, 1454-55 (11th Cir. 1993) (citing O.C.G.A. § 9-14-48(d) and upholding a finding of procedural default on numerous claims); see also Waldrip v. Head, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default, and in order to surmount the bar to a defaulted

claim, one must meet the 'cause and prejudice' test."); <u>Black v. Hardin</u>, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows:  a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus.").  In addition, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition.  O.C.G.A. § 9-14-51; <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

### 2. Petitioner's Claims in Grounds One, Two, and Three Are Procedurally Defaulted.

In Ground One, Petitioner argues the trial court violated his right to a fair trial and due process rights when it gave conflicting instructions on the effect of impeachment of a witness and credibility of a witness, in that the jury was instructed impeachment proves that a witness is unworthy of belief but the jury was to decide credibility.   In Ground Two, Petitioner argues the trial court denied him a fair trial when it gave a defective jury instruction on substantive evidence which addressed the effect of substantive evidence but did not explain what substantive evidence is.

In Ground Three, Petitioner alleges trial counsel provided ineffective assistance by: (a) failing to timely object to the improper jury instructions described in Grounds One and Two above; (b) operating under a known conflict of interest by representing Petitioner and, in separate cases, previously representing critical State's witnesses regarding their plea deals

14

in exchange for testimony against Petitioner; (c) failing to thoroughly cross-examine State's witnesses about their plea deals in exchange for testimony against Petitioner; (d) failing to object to lineup identification testimony by State's witness Steve Smith without any basis being established for that lineup; and (e) failing to file a motion to reveal the deal between the State and witnesses Bruce Benziger and Steve Smith in exchange for their testimony against Petitioner.   Respondent argues these three claims, including all subparts, were not properly raised in the state courts and are therefore procedurally defaulted, as found by the state habeas court under O.C.G.A § 9-14-48(d).  (Doc. no. 8, pp. 7-10; doc. no. 9-3.)

The state habeas court found that Grounds One, Two, and Three were procedurally defaulted under O.C.G.A § 9-14-48(d) because Petitioner did not timely raise these claims at trial and then assert them as error on direct appeal and did not satisfy the requisite cause and prejudice standard to excuse the default.  (Doc. no. 9-3.)   As to Ground One, Petitioner requested these charges, (doc. no. 9-13, p. 9; doc. no. 9-14, p. 7), and appellate counsel saw no viable reason for challenging them on appeal.[4]  (Doc. no. 9-8, pp. 4-5.)  As to Ground Two, Petitioner did not identify the specific jury charge related to substantive evidence to which he was raising a challenge, but in his brief he discussed the charge on consistency of statements, which contained language concerning "substantive evidence."  (Doc. no. 9-1, p. 7; doc. no. 9-22, pp. 97-98.)  Petitioner requested the instruction, did not object at trial when it was given, and did not raise the issue on appeal.  (Doc. no. 9-14, p. 9; doc. no. 9-22, pp. 113-14; doc. no. 9-23, pp. 175-76.)  None of the ineffective assistance of trial counsel claims

---

[4]As discussed *infra* § III(C)2, Petitioner did not receive ineffective assistance of appellate counsel.

raised in Ground Three were raised on appeal, as the only ineffective assistance claim raised to the Georgia Supreme Court, and rejected, was a claim concerning a failure to object to hearsay in the form of alleged statements from Petitioner's co-defendant to another individual. Folston, 755 S.E.2d at 804-05.

Because these claims were not timely raised in the state court proceedings and denied by the state court under state procedural default rules, they are procedurally defaulted in these proceedings and provide no basis for federal habeas relief. See Boyd, 697 F.3d at 1336; McNair, 416 F.3d at 1305; Smith, 256 F.3d at 1139.

> **3. Petitioner Cannot Satisfy the Cause and Prejudice Standard to Justify Federal Review of His Defaulted Claims, and the Miscarriage of Justice Exception Does Not Apply.**

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 565 U.S. 266, 280 (2012) (internal quotation marks omitted). "Once cause is proved, a petitioner also must prove prejudice. He must show 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). For example, procedural default does not preclude federal habeas review when

16

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 569 U.S. 413, 423 (2013); Martinez v. Ryan, 566 U.S. 1, 13-14, 16-17 (2012).

Petitioner has presented no valid justification for failing to raise his defaulted claims at the proper time in his state proceedings, let alone something external to him that cannot be fairly attributed to him.  Indeed, Petitioner concedes his issues "were either not objected to at trial or raised during the motion for new trial hearing."  (Doc. no. 1, p. 28.)  Because he recognizes the default problem, Petitioner explains he has raised all of his claims "under ineffective assistance of both trial and appellate counsel."  (Id.)  Although Petitioner contends raising his claims under the rubric of ineffective assistance solves his procedural bar problem, as discussed below, he has no valid ineffective assistance claims.  In addition, Petitioner can show neither prejudice resulting from the default nor that the claims are substantial.  Accordingly, Petitioner has failed to demonstrate the cause and prejudice necessary to overcome his procedural default.

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice."  Jones, 436 F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  The narrow fundamental miscarriage of justice exception encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of

the crime.  Murray, 477 U.S. at 496; see also Johnson, 256 F.3d at 1171 ("This exception is exceedingly narrow in scope, as it concerns a petition's 'actual' innocence rather than his 'legal' innocence.").  In McQuiggin v. Perkins, the Supreme Court held that this exception survived AEDPA's passage but "applies to a severely confined category:  cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  569 U.S. 383, 395 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Petitioner does not argue, let alone submit any evidence, that he is probably, factually innocent of the crimes of which he was convicted.  To the contrary, as discussed in detail below, all of his arguments are based on legal theories of alleged error.  Accordingly, these first three claims, including all subparts, in the instant § 2254 petition have been defaulted and provide no basis for federal habeas relief.

**C.   Applying AEDPA Deference to the Remaining Claim In Ground Four that Was Previously Rejected by the State Court, Federal Habeas Relief Is Not Warranted.**

**1.   Under Strickland v. Washington, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims.**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.

Indeed, "strategic choices are 'virtually unchallengeable.'"   Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690 and Waters v. Thomas, 46 F.3d 1506, 1522 (11th Cir. 1995) (*en banc*)).   To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice.   Strickland, 466 U.S. at 690.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."   Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).   "The test has nothing to do with what the best lawyers would have done.   Nor is the test even what most good lawyers would have done.   We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."   Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .   If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).   Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice."  Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (explaining appellate counsel not required to raise every non-frivolous issue).  Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'"  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted).  Moreover, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review.  Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264.  Prejudice turns on whether "the neglected claim would have a reasonable probability of success on appeal."  Philmore, 575 F.3d at 1265 (citation omitted).

20

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. at 699. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Richter, 562 U.S. at 105 (quotation marks and citations omitted); see also Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." Woods v. Etherton, 578 U.S.-, 136 S. Ct. 1149, 1151 (2016) (internal quotations and citations omitted). To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id.  Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial."  Richter, 562 U.S. at 105; see also Sexton v. Beaudreaux, 584 U.S.-, 138 S. Ct. 2555, 2560 (U.S. 2018) ("[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)); Woods, 135 S. Ct. at 1376 ("AEDPA's standard is intentionally difficult to meet.").

> **2.     The State Court's Application of Strickland to Petitioner's Remaining Ineffective Assistance Claim in Ground Four Was Not Objectively Unreasonable.**

In Ground Four of the federal petition, Petitioner argues he received ineffective assistance from his appellate counsel because the issues contained in Grounds One through Three of the federal petition were not raised on direct appeal.  The state habeas court rejected Petitioner's ineffective appellate assistance claim, concluding Petitioner had not shown Mr. Weston's performance was objectively unreasonable or that he was prejudiced by counsel's performance.  (See doc. no. 9-3.)  The Georgia Supreme Court denied the request for a CPC in a two sentence order:  "Upon consideration of the application for certificate of probable cause to appeal the denial of habeas corpus, it is ordered that it be hereby denied.  All the justices concur."  (Doc. no. 9-5.)  Because the state supreme court decision did not come accompanied with reasons, this Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" when determining, pursuant to 28 U.S.C. § 2254(d), whether the state court decision was reasonable.  Wilson v. Sellers, 584 U.S.-, 138 S. Ct. 1188, 1192 (2018).  The Court is also guided by AEDPA's

mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe, 834 F.3d at 1336.

Thus, the Court turns its attention to the state habeas court reasoning, as it is the last state court to decide Petitioner's federal ineffective assistance of appellate counsel claim in a reasoned opinion. See Wilson, 138 S. Ct. at 1192. As discussed below, the state habeas court correctly identified and applied the two-part Strickland analysis to determine Petitioner did not show counsel's performance was objectively unreasonable or that he was prejudiced by counsel's performance. (See doc. no. 9-3.)

### a.      Testimony at State Habeas Evidentiary Hearing

Mr. Weston was admitted to the Georgia Bar in 1996, and after spending one year as a law clerk for the superior court judges in Augusta, he practiced law for four years in the Atlanta area. (Doc. no. 9-7, p. 14.) Upon his return to Augusta, Mr. Weston primarily did civil defense work, but during the last several years prior to his representation of Petitioner, he devoted twenty to twenty-five percent of his practice to criminal work, mostly appellate work and some federal criminal work. (Id.)

In preparing Petitioner's case, Mr. Weston reviewed the trial transcript, met with Petitioner, interviewed trial counsel, and unsuccessfully attempted to locate a potential alibi witness known only by the name "Jeff." (Id. at 15.) Mr. Weston considered a larger number of issues than those that eventually made it into his post-conviction briefing, including the testimony of the State's most important witness, Mr. Smith, and a potential conflict of

interest with trial counsel representing Petitioner after previously representing Mr. Smith's partner in burglary and witness at Petitioner's trial, Mr. Benziger.  (Id. at 16-17.)   Mr. Weston also considered as part of his standard practice, but did not see, any viable challenges to the jury instructions, particularly based on his familiarity with judges in the Augusta Judicial Circuit using pattern jury instructions for the issues about which Petitioner had concerns.  (Doc. no. 9-8, pp. 4-5.)  Mr. Weston also investigated whether Mr. Smith or Mr. Benziger had received a deal in exchange for their testimony against Petitioner but concluded there was no such deal.  (Id. at 5-6, 11.)

### b. Decision Not to Challenge Jury Instructions on Impeachment of a Witness and Credibility of Witnesses

Petitioner alleges Mr. Weston should have challenged the trial court giving conflicting instructions on the effect of impeachment of a witness and credibility of witnesses, in that the jury was instructed impeachment proves a witness is unworthy of belief, but that the jury was to decide credibility.  He offers no legal authority in support of his claim that the instructions were improper.

As requested by Petitioner, (doc. no. 9-13, p. 9; doc. no. 9-14, pp.7-8), the trial court gave the following charges on credibility, and subsequently impeachment:

> Now, ladies and gentlemen, you must determine the credibility of the believability of the witnesses.  It is for you to determine which witness or witnesses you believe or do not believe, if there are some whom you do not believe.  In deciding credibility you may consider all the facts and circumstances of the case, the manner in which the witnesses testify, their means and opportunity for knowing the facts about which they testify, the nature of the facts about which they testify, the probability or the improbability of their testimony and the occurrences - -  the occurrences about which they testify.  You may also consider their personal credibility insofar as it may have been shown in your presence and by the evidence.

24

(Doc. no. 9-22, p. 94 (Tr. Trs. 396).)

As to impeachment:

Ladies and gentlemen, to impeach a witness is to prove that the witness is unworthy of belief.  Now, a witness may be impeached by disproving the facts to which the witness testifies; by proof that the witness has been convicted of the offenses of burglary or forgery; by proof that the witness has been convicted of a crime involving dishonesty or making false statements; or by proof of contradictory statements previously made by the witness about matters relevant to the witness' testimony and to the case.  Now, if any attempt has been made in this case to impeach any witness by proof of contradictory statements previously made you must determine from the evidence first, whether any such statement was made; second, whether such statements were contradictory to any statements the witness made on the witness stand; and, third, whether such statements were relevant to the witness' testimony and to the case.  If you find that a witness has been successfully impeached by proof of previous contradictory statements  you may disregard that testimony unless it is supported by other credible testimony.  Now, the credit to be given to the balance of the testimony of the witness would be for you to determine.  As to impeachment, it is for you to determine whether or not a witness has been impeached and to determine the credibility of such witness and the weight the witness' testimony shall receive in the consideration of the case.

(Doc. no. 9-22, pp. 95-96 (Tr. Trs. 397-98).)

The state habeas court found, as does this Court, Mr. Weston did not act unreasonably in choosing not to challenge these instructions.   As the state habeas court also found, Petitioner has not established the requisite prejudice because the charges tracked the pattern jury instructions.  See Weeks v. State, 729 S.E.2d 570, 574 (Ga. App. 2012) (citing Georgia Suggested Pattern Jury Instructions, Vol. II:   Criminal Cases § 1.31.10 and rejecting argument that using credibility charge closely following pattern instructions immediately followed by charges regarding impeachment of a witness had net effect of misleading jurors on information they could consider); Collier v. State, 707 S.E.2d 102, 105-06 (Ga. 2011)

(rejecting claim that trial court "invaded the province of the jury, expressed an opinion, and gave contradictory and confusing instructions on impeachment and credibility of a witness" because when charges read in totality, it is clear the jury determines whether a witness has been impeached, the credibility of such witness, and the weight afforded to the testimony); see also doc. no. 9-14, pp. 7-8 (citing then-Georgia Suggested Pattern Jury Instructions, Vol. II:  Criminal Cases §§ 1.31.40 and 1.31.50 on witness impeachment).  Indeed, the trial court's entire instruction, not simply isolated parts, must be considered.  Cupp v. Naughten, 414 U.S. 141, 146–47 (1973).

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Mr. Weston's performance was neither deficient nor prejudicial with respect to the decision not to challenge these instructions, and this claim provides no basis for federal habeas corpus relief.

> ### c.    Decision Not to Challenge Jury Instruction on "Substantive Evidence"

Petitioner next alleges Mr. Weston should have challenged the trial court giving a defective jury instruction addressing the effect of substantive evidence without explaining what substantive evidence is.  Petitioner does not identify exactly the instruction about which he is complaining, let alone does he offer any legal authority in support of his claim that this unidentified instruction was improper.  However, as identified by the state habeas court, Petitioner requested the following instructions, (doc. no. 9-14, pp. 9-10), referencing "substantive evidence":

Ladies and gentlemen, with regard to prior consistent statements, I charge you that should you find that any witness has made a statement prior to trial of this case that is consistent with that witness' testimony from the witness stand and such prior consistent statement is material to the case and to the witness' testimony then you are authorized to consider the other statement as substantive evidence.

Likewise as to prior inconsistent statements, should you find that any witness has made any other statement inconsistent with that witness' testimony from the stand in this case and that – and that such prior inconsistent statement is material to the case and to the witness' testimony then you are authorized to consider that other evidence not only for purposes of impeachment, but also as substantive evidence in this case.

(Doc. no. 9-22, pp. 96-97 (Tr. Trs. 398-99).)

Petitioner did not question Mr. Weston about this issue at the state habeas hearing, and the briefing does not offer any argument or support for a conclusion that Mr. Weston acted unreasonably in choosing not to challenge the trial court's instruction.  Nor is there any indication of any prejudice that inured to Petitioner.  As explained in the case law cited by trial counsel when requesting the charges, and as reflected in the language of the charges, prior inconsistent statements may be considered not only for impeachment, but substantive evidence of the matter asserted.  Cuzzort v. State, 334 S.E.2d 661, 662 (Ga. 1985); Gibbons v. State, 286 S.E.2d 717 (Ga. 1982) ("[A] prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes.")

Petitioner offers no explanation why or what additional explanation of substantive evidence was necessary, particularly when immediately contrasted to use for "purposes of impeachment."  Nor does he offer an explanation of any impact or confusion created in the case based on the use of the term "substantive evidence" without further explanation.  He

also fails to point to any particular prior statements or impeachment evidence that was either misused as substantive evidence or improperly excluded from consideration as substantive evidence.

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Mr. Weston's performance was neither deficient nor prejudicial with respect to the decision not to raise a challenge on this meritless point, and this claim provides no basis for federal habeas corpus relief.

### d.     Decision Not to Challenge Trial Counsel's Performance

Petitioner also alleges Mr. Weston provided ineffective assistance by not raising the following issues on appeal regarding alleged ineffective assistance of trial counsel.

### i. Jury Instructions on Impeachment, Credibility, and Substantive Evidence

As discussed in Parts 3(b) and (c), *supra*, the trial court did err in giving its instructions regarding impeachment, credibility, and substantive evidence.  As there was no error by the trial court, the state habeas court correctly determined there was no ineffective assistance of trial counsel that Mr. Weston could have challenged on appeal regarding these issues.   "Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'"  Nyhuis, 211 F.3d at 1344.

Therefore, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Mr. Weston's performance was neither deficient nor prejudicial with

respect to the decision not to raise a challenge on these meritless issues, and this claim provides no basis for federal habeas corpus relief.

### ii.  Alleged Conflict of Interest

Petitioner alleges trial counsel had a known conflict of interest based on her representation of Petitioner, and in separate cases, previously representing critical State's witnesses regarding their plea deals in exchange for testimony against Petitioner.  On this point the state habeas court concluded Mr. Weston had discussed with trial counsel a potential conflict regarding her prior representation of Mr. Benziger, but did not find it to be a viable issue.  (Doc. no. 9-3, p. 9.)  Pursuant to § 2254(e)(1), absent clear and convincing evidence to the contrary, this Court presumes the correctness of the following factual findings of the state court:

> Steven Smith and Bruce Benziger were facing burglary charges arising from the same incident, and trial counsel represented Mr. Benziger in that matter. (HT 15, 869).  Trial counsel discussed this potential conflict with her supervisor, and he felt that it did not pose a conflict of interest.  (HT 869).  Trial counsel also discussed the matter with Petitioner.  (HT 869-70).  Trial counsel represented Mr. Benziger before Petitioner was arrested on the murder charge, and her representation of Mr. Benziger was over before Mr. Benziger gave a statement in reference to the murder.  (HT 871).  The record of the burglary conviction on which trial counsel represented Mr. Benziger shows that the conviction date was February 18, 2009.  (HT 758).[5]  Petitioner was not indicted in this matter until February 24, 2009.  (HT 53).  Mr. Benziger did not receive a more favorable plea deal in exchange for testifying against Petitioner.  (HT 872).  Trial counsel did not represent Steven Smith.  Id.

Id.

---

[5]The handwritten habeas transcript numbering is somewhat unclear, but in the federal record, the February 18, 2009 conviction can be found at doc. no. 9-23, p. 44.

Petitioner acknowledges his trial counsel testified at the motion for new trial that she had discussed the potential conflict with Petitioner and had discussed the matter with her supervisor.  (Doc. no. 1, p. 29.)  However, he strenuously argues that because there is no written waiver memorializing the discussion and he submitted an affidavit and testimony in support of his state habeas petition that trial counsel never discussed the conflict issue with him, his "affidavit and testimony has remained unrebutted, and stands as fact, and cannot be legally ignored." (Id. at 30.)  To the contrary, at best his affidavit and testimony contradicts that of trial counsel at the motion for new trial that she had discussed the conflict issue with Petitioner and her supervisor.  (Doc. no. 9-23, pp. 154-56.)  In making its factual finding, the state habeas court believed trial counsel that she had raised the potential conflict issue.  That decision is presumptively correct absent clear and convincing evidence to the contrary.  See 28 U.S.C. § 2254(e)(1).  Petitioner's own statement, already considered and rejected by the state habeas court, does not provide the requisite clear and convincing evidence.

Moreover, in investigating a potential conflict of interest claim, Mr. Weston could not substantiate any interference with, or curtailment of, Petitioner's rights based simply on the fact trial counsel had previously represented Mr. Benziger.  (Doc. no. 9-7, p. 17.)  As the state court concluded, Mr. Weston determined trial counsel's representation of Mr. Benziger did not overlap with her time representing Petitioner in the murder case.  (Doc. no. 9-3, p. 9; doc. no. 9-7, p. 17.)  Specifically, Petitioner was originally charged with making false statements during the course of the Richmond County Sheriff's Department investigation of the murder for which Petitioner would eventually be indicted, and trial counsel's representation of Petitioner originated in May of 2008 with that charge.  (Doc. no. 9-7, pp. 7-

30

8; doc. no. 9-21, p. 247 (Tr. Trs. 238).)  Trial counsel's representation of Mr. Benziger on the burglary charge commenced with the arraignment on September 26, 2008, and ended with his sentencing on February 18, 2009.  (Doc. no. 9-23, pp. 44, 46.)  While Petitioner's false statements charge was pending, he was indicted for murder on February 24, 2009.  (Doc. no. 9-10, p. 2.)  Thus, any overlap occurred on the false statements charge, not the murder charge.

Trial counsel did not know about Mr. Benziger's connection to the murder case against Petitioner until after her representation of Mr. Benziger concluded.  (Doc. no. 9-7, p. 17; doc. no. 9-23, pp. 156, 159.)  Petitioner believes it is "highly improbable" trial counsel would not have known about Mr. Benziger's involvement in the murder case, (doc. no. 1, p. 30), but he offers no evidence to substantiate his speculation.  Petitioner points to statements Mr. Benziger gave an investigator in May of 2008 regarding the involvement of Petitioner's co-defendant who was convicted as the actual shooter of the murder victim, (doc. no. 9-21, pp. 196-201 (Tr. Trs. 187-192)), but he offers nothing showing trial counsel knew of the connection to Petitioner and his murder charge, which was not filed until February 24, 2009.  In any event, citing Cuyler v. Sullivan, 446 U.S. 335 (1980), the state habeas court concluded there was no actual conflict of interest adversely affecting trial counsel's performance because "her representation of Mr. Benziger on the burglary charge had concluded when he made his statement in connection with the murder charge, and Mr. Benziger did not receive favorable treatment in his guilty plea in exchange for testifying against Petitioner."  (Doc. no. 9, p. 10.)

31

Petitioner has not shown this conclusion was an unreasonable application of <u>Cuyler</u>. Indeed, he has not made any showing how this supposed conflict adversely impacted trial counsel's performance.  Trial counsel extensively cross-examined Mr. Benziger about his use of drugs and alcohol, as well as his criminal history and connection to Mr. Smith.  Trial counsel also focused on the timing of his recent sentencings in relation to his statements to law enforcement about the murder case, highlighting that Mr. Benziger had appeared twice for sentencing since making his first statement to law enforcement in May 2008 about the murder.  (Doc. no. 9-21, pp. 267-75 (Tr. Trs. 258-66).)   Even if there had been some potential for a conflict of interest, it is long-settled a defendant can waive conflict-free representation.  <u>United States v. Rodriguez</u>, 982 F.2d 474, 477 (11th Cir. 1993).  Despite Petitioner's disagreement with the factual conclusion, the state habeas court determined trial counsel had discussed the issue of her prior representation with Petitioner.  (Doc. no. 9-3, p. 9.)

Petitioner also questions the conclusion that Mr. Benziger did not receive favorable treatment for his testimony because it "appears rebutted" by the order denying the motion for new trial which was prepared by the ADA for the trial judge's signature.  (Doc. no. 1, p. 31.) Examination of the new trial order does reveal it *incorrectly* states, "Mr. Benziger received a plea deal that was tied to his cooperation in this case."  (Doc. no. 9-19, p. 11.)  In fact the entirety of the paragraph in which that statement appears is replete with mistaken references to Petitioner, Mr. Benziger, and Mr. Smith and their various roles.  For example, the order mistakenly states trial counsel previously represented Mr. Smith rather than Mr. Benziger, and states that if Mr. Smith, rather than Petitioner, had expressed dissatisfaction with trial

counsel's representation, there was a system in place at the Public Defender's office to receive a new appointed attorney.  (Id.)  However, the last reasoned state court decision, the state habeas opinion, made correct findings of fact supported by the record.  (See doc. no. 9-23, pp. 44, 66 (trial counsel represented Mr. Benziger on burglary charge resolved by guilty plea entered February 18, 2009; David Brunk, not trial counsel, represented Mr. Smith on burglary charge resolved by guilty plea entered February 5, 2009); id. at 154-56 (trial counsel testified she discussed prior representation of Mr. Benziger with Petitioner); id. at 157 (Mr. Benziger not given a deal because of testimony against Petitioner).

Petitioner offers only a different interpretation of the record, not the requisite clear and convincing evidence, challenging the state court's factual findings.  However, AEDPA requires this Court to give deference to the state court findings, and even if this Court were to reach a different conclusion – which it does not – about the facts in the record, Petitioner would still not be entitled to relief.  See Tharpe, 834 F.3d at 1336.

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Mr. Weston's performance was neither deficient nor prejudicial with respect to the decision not to raise a challenge based on an alleged conflict of interest, and this claim does not provide a basis for federal habeas corpus relief.

### iii. Ineffective Cross-Examination of State's Witnesses Regarding Pleas Deals in Exchange for Testimony Against Petitioner

Petitioner also argues Mr. Weston should have challenged trial counsel's failure to thoroughly cross-examine the State's witnesses about their alleged plea deals received in

exchange for their testimony against Petitioner at his murder trial.  Notably, Petitioner's briefing on this point only concerns an alleged plea deal with Mr. Benziger.  (Doc. no. 1, p. 34.)  Petitioner's argument in support of this contention is completely dependent upon the factually incorrect order denying the motion for new trial prepared by the ADA.  Mr. Weston testified at the habeas hearing, however, he investigated whether there was a deal with Mr. Benziger the State had not disclosed, but could find none.  (Doc. no. 9-8, p. 1.)

Mr. Weston spoke with trial counsel and the ADA who had prepared the order on the motion for new trial, and the ADA confirmed at that time she was unaware of any deal for Mr. Benziger.  Id.  Petitioner's argument that Mr. Benziger did receive some type of deal is not substantiated by the facts in the record accurately identified by the state habeas court. Thus, as the state habeas court correctly identified, (doc. no. 9-3, pp. 10-11), although Mr. Benziger was not questioned at trial about receiving consideration in his case for providing testimony against Petitioner in the murder case, the record shows there was no basis upon which to pursue such a line of questioning.

As to the contention the alleged plea deal for Mr. Smith should have been pursued in a more thorough cross-examination, that argument is also not supported by the record.  The state habeas court made the following, presumptively correct findings of fact:

> At Petitioner's trial, Steven Smith testified that he had a conversation with the attorney representing him in a criminal matter about wanting to provide information to the district attorney's office and the sheriff's office about the case for which Petitioner was indicted and tried.  (HT 513).  His attorney told him that he would talk to the district attorney's office.  Id.  On February 9, 2009, a meeting was held with Mr. Smith, his attorney, the prosecutor, and a sheriff's investigator, at which Mr. Smith was advised he was certainly welcome to make a statement, but that he would not be offered any deal or benefit in exchange for his statement.  (HT 514, 516).  Mr. Smith

34

elected to give a statement anyway.  (HT 515).  Trial counsel did not cross-examine Mr. Smith about this issue.  (HT 517-28, 552-56).  Appellate counsel felt this was not a viable issue because of Mr. Smith's testimony that he had not received a deal, and that to pursue the issue further on cross-examination would have made Mr. Smith an even more credible witness.  (HT 22-23).

(Doc. no. 9-3, p. 11.)

As Mr. Weston testified at the habeas hearing, in his opinion the case came down to Mr. Smith's testimony and whether the jury believed him, even though he had a fairly lengthy criminal history and had been involved in a widely-publicized car chase between the time Petitioner's victim died and Petitioner's murder trial.  (Doc. no. 9-7, p. 16.)  Investigator Benjamin Parrish testified Mr. Smith was not promised or offered any benefit for cooperating.  (Doc. no. 9-21, pp. 211-12 (Tr. Trs. 202-03).)  Mr. Smith also testified he did not receive any benefit for his testimony and explained his altruistic motivation for speaking up.  (Id. at 298-301 (Tr. Trs. 289- 92).)  Moreover, trial counsel cross-examined Mr. Smith on his criminal history, as well as the chronology of when he made his inculpatory statement about Petitioner.  (Id. at 303-06 (Tr. Trs. 294-97).)  Mr. Weston felt that had trial counsel pressed the issue of a possible deal for Mr. Smith's testimony, after he already testified he had not received a deal, would only have made him a more effective witness.  (Doc. no. 9-8, p. 5.)

Petitioner points to nothing in the record to substantiate his theory that Mr. Smith did receive a deal in exchange for his testimony against Petitioner.  Even at the hearing on the motion for new trial,  trial counsel testified that she could not directly say Mr. Smith received a better plea deal for his testimony, offering instead only supposition based on the sentence

imposed.  (Doc. no. 9-23, p. 157.)  Speculation and supposition will not suffice to obtain federal habeas corpus relief.

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.  Mr. Weston's performance was neither deficient nor prejudicial. Accordingly, Petitioner's Strickland claim regarding the cross examination of Mr. Benziger and Mr. Smith does not provide a basis for federal habeas corpus relief.

### iv.  Lineup Identification by Mr. Smith

Petitioner also argues Mr. Weston should have challenged trial counsel's failure to object to lineup identification testimony by Mr. Smith without any basis being established for that lineup.  On this point, the state habeas court made the following findings of fact:

> On the issue of trial counsel failing to object to lineup testimony by Smith without any basis being established for that lineup, appellate counsel did not see any viability to the issue because Mr. Smith identified Petitioner in the courtroom, as did multiple other witnesses.  (HT 23).  Mr. Smith made an in-court identification of Petitioner on direct examination by the State.  (HT 502).

(Doc. no. 9-3, pp. 11-12.)

Petitioner does not explain anything about this argument, let alone explain why it would have been unreasonable to decide not to challenge Mr. Smith's lineup testimony in light of his in-court identification, as well as that of other witnesses.[6]  Petitioner does not dispute he was identified in court.  Nor does Petitioner identify any prejudice that inured to him by this challenge not being pursued.

---

[6]Mr. Smith testified he had been shown two lineups, one of which included Petitioner. (Doc. no. 9-22, p. 23 (Tr. Trs. 325).)  Mr. Smith could not remember which investigator presented the lineup, but he verified signing the picture.  Id.

In sum, the state court's decision to reject this claim was not an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts in light of the evidence presented.  Mr. Weston's performance was neither deficient nor prejudicial. Accordingly, Petitioner's <u>Strickland</u> claim regarding the lineup identification by Mr. Smith does not provide a basis for federal habeas corpus relief.

### v. Motion to Reveal the Deal between State and Mr. Smith and Mr. Benziger in Exchange for Testimony against Petitioner

Petitioner also argues Mr. Weston should have challenged trial counsel's failure to file a motion to reveal the deal between the State and Mr. Benziger and Mr. Smith in exchange for their testimony against Petitioner.  The state habeas court rejected this claim, as Mr. Weston did not see the failure to file a motion as a viable issue because there was nothing to reveal.  (Doc. no. 9-3, p. 12.)  Mr. Weston testified, "[T]here was nothing to reveal as far as - - even the State and the State admitted it and there was nothing there." (Doc. no. 9-8, p. 6.)  Although Mr. Weston did not recall trial counsel had specifically filed a motion to reveal the deal, he also testified as to his belief that trial counsel's general discovery requests would include any type of exculpatory evidence, and he testified as to his familiarity with the open file discovery policy in the Augusta Judicial Circuit.  (<u>Id.</u> at 6, 11.) Indeed, the record confirms trial counsel filed a "Notice of . . . Consolidated Motions and Demands for Discovery, Statements, Scientific Reports, and Other Enumerated Motions." (Doc. no. 9-10, p. 10.)  Mr. Weston also testified it was rare for him to see a specific motion

to reveal the deal, particularly where, as in this case, there was nothing to prompt trial counsel to file a specific motion or request about revealing a deal. (Doc. no. 9-8, pp. 11-12.)

As discussed in detail above, other than the incorrect order on the motion for new trial and trial counsel's testimony at the motion for new trial concerning her supposition about a deal for Mr. Smith, there is nothing in the record to support Petitioner's theory. Indeed, as Mr. Weston pointed out at the state habeas hearing, trial counsel was wrong about her supposition because the trial testimony indicates Mr. Smith did not get a deal. (Id. at 15-16.) Moreover, Mr. Weston testified he spent a "significant amount of time" investigating the issue of potential plea deals, including talking to the ADA who prepared the mistaken order on the motion for new trial. (Id. at 6.) Although Petitioner cites case law supporting the general proposition the state prosecution has a duty to reveal deals provided to its witnesses, his argument falters from the start because the record here does not provide any substantiation of a deal for Mr. Benziger or Mr. Smith. (Doc. no. 1, p. 33 (citing Bagley v. Lumpkin, 798 F.2d 1297 (9th Cir. 1986) and Haber v. Wainwright, 756 F.2d 1520, 1524 (11th Cir. 1985)).

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented. Mr. Weston's performance was neither deficient nor prejudicial. Accordingly, Petitioner's Strickland claim regarding a motion to reveal the deal with Mr. Benziger and Mr. Smith does not provide a basis for federal habeas corpus relief.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the

§ 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 9th day of August, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA